IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BORDER AREA MENTAL HEALTH, INC.,
COUNSELING ASSOCIATES, INC., EASTER
SEALS EL MIRADOR, FAMILIES & YOUTH, INC.,
HOGARES, INC., SOUTHWEST COUNSELING
CENTER, INC., SOUTHERN NEW MEXICO
HUMAN DEVELOPMENT, INC., TEAMBUILDERS
COUNSELING SERVICES, INC., THE
COUNSELING CENTER, INC., and VALENCIA
COUNSELING, INC.,

   Plaintiffs,

v.                 CV 16-1213 MV/SCY

UNITED BEHAVIORAL HEALTH, INC. and
UNITED HEALTHCARE INSURANCE COMPANY,
INC., d/b/a OPTUMHEALTH NEW MEXICO,
PUBLIC CONSULTING GROUP, INC., ELIZABETH
A. MARTIN, ANDREW SEKEL, TIMOTHY S.
MILLER, and JOHN DOES 1-10,

   Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on United Defendants' Motion to Compel Arbitration [Doc. 6]. The Court, having considered the motion, briefs, and relevant law, and being otherwise fully informed, finds that the Motion is well-taken and will be granted.

## BACKGROUND

OptumHealth New Mexico "("OHNM") is a joint venture that was formed by United Behaviorial Health, Inc. and United Healthcare Insurance Company, Inc. Doc. 6-1 at ¶ 3. In 2009, OHNM entered into a "Statewide Contract" with the New Mexico Inter-Agency Behavioral Health Purchasing Collaborative (the "Collaborative") to manage New Mexico's

1

Medicaid and state-funded programs. Id. at ¶ 4. Pursuant to the Statewide Contract, from 2009 through December 31, 2013, OHNM served as the "Statewide Entity" to administer the delivery of behavioral health services to individuals enrolled in and eligible to receive services under the Collaborative's agency programs. Id. In turn, in its capacity as the Statewide Entity, OHNM entered into contracts with numerous healthcare providers, including Plaintiffs, to provide the necessary behavioral health and/or substance abuse health care services to the individual enrollees. Id. at ¶ 5.

Specifically, Plaintiffs Border Area Mental Health Services, Counseling Associates, Easter Seals El Mirador, Families & Youth, Hogares, Southwest Counseling Center, Southern New Mexico Human Development, TeamBuilders Counseling Services, The Counseling Center, and Valencia Counseling each entered into a "Provider Agreement" with OHNM. Id. at ¶ 6. Each Provider Agreement contains the following arbitration provision:

> OHNM and Provider will work together in good faith to resolve any disputes about their business relationship. If the parties are unable to resolve the dispute within 30 days following the date one party sent written notice of the dispute to the other party, and if OHNM or Provider wishes to pursue the dispute, it shall be submitted to binding arbitration in accordance with the rules of the American Arbitration Association ("AAA"). In no event may arbitration be initiated more than one year following the sending of written notice of the dispute. Any arbitration proceeding under this Agreement shall be conducted in a location agreed to by the parties or as selected by the AAA if the parties cannot agree on a location. The arbitrators may construe or interpret but shall not vary or ignore the terms of this Agreement, shall have no authority to award any punitive or exemplary damages, and shall be bound by controlling law. If the dispute pertains to a matter that is generally administered by certain OHNM procedures, such as credentialing or quality improvement plan, the procedures set forth in that plan must be fully exhausted by Provider before Provider may invoke its right to arbitration under this Article. The parties acknowledge that because this Agreement affects interstate commerce the Federal Arbitration Act applies.

Doc. 6-1, Ex. 1 at Art. 30. Similarly, Plaintiffs Counseling Associates, Families & Youth, Hogares, and TeamBuilders Counseling Services each entered into a "Facility Participation

Agreement" with United Behavioral Health.   Id. at 10.   Each Facility Participation Agreement contains the following arbitration provision:

> UBH or Payor and Facility will work together in good faith to resolve any disputes about their business relationship.   If the parties are unable to resolve the dispute within 30 days following the date one party sent written notice of the dispute to the other party, and if UBH, Facility or any Payor that has consented in writing to binding arbitration wishes to pursue the dispute, it shall be submitted to binding arbitration in accordance with the rules of the American Arbitration Association.   In no event may arbitration be initiated more than one year following the sending of written notice of the dispute.   Any arbitration proceeding under this Agreement shall be conducted in a location agreed to by the parties or as selected by the AAA if the parties cannot agree on a location.   The arbitrators may construe or interpret but shall not vary or ignore the terms of this Agreement, shall have no authority to award any punitive or exemplary damages, and shall be bound by controlling law.   If the dispute pertains to a matter which is generally administered by certain UBH procedures, such as a credentialing or quality improvement plan, the procedures set forth in that plan must be fully exhausted by Facility before Facility may invoke its right to arbitration under this section.   The parties acknowledge that because this Agreement affects interstate commerce the Federal Arbitration Act applies.

Doc. 6-1, Ex. 2 at Section 8.

Plaintiffs allege that OHNM mismanaged its Statewide Contract and, in order to cover up its mismanagement, accused its healthcare providers, including Plaintiffs, of engaging in institutional fraud.   Doc. 1-1 ¶¶ 36, 43.   Plaintiffs further allege that OHNM audited Plaintiffs with the predetermined outcome of finding "credible allegations of fraud," in order to trigger the suspension of payments to Plaintiffs for the healthcare services that they had provided pursuant to their contracts with OHNM.   Id. at ¶¶ 52-55.   As a result, Plaintiffs allege, they are owed payments totaling $11.5 million.   Id. ¶ 62.

Based on these allegations, Plaintiffs commenced the instant action in the First Judicial District Court of New Mexico, Santa Fe County, on June 23, 2016, against United Behavioral Health and United Healthcare Insurance Company, doing business as OHNM, Elizabeth Martin, Chief Executive Officer of OHNM, Andrew Sekel, Chief Executive Officer of OptumHealth

3

Behavioral Solutions, and Timothy S. Miller, regional manager for OHNM, collectively referred to as the "United Defendants," in addition to the Public Consulting Group, the entity that was hired to conduct the audits of Plaintiffs. Doc. 1-1. On November 3, 2016, United Defendants removed the action to this Court. Doc. 1. In their Complaint, Plaintiffs allege claims against United Defendants for interference with contractual relations, prima facie tort, civil conspiracy to commit interference with contractual relations and prima facie tort, and violations of the New Mexico Unfair Practices Act. Doc. 1-1 at ¶¶ 67-89.

United Defendants filed the instant motion to compel arbitration, arguing that the terms of the Provider Agreements and the Facility Participation Agreements require Plaintiffs to submit their claims to arbitration. Plaintiffs Border Area Mental Health, Counseling Associates, Easter Seals El Mirador, Families & Youth, Hogares, Southwest Counseling Center, and Valencia Counseling (collectively referred to as "Border Area Mental Health Plaintiffs") filed a response in opposition to the motion. Additionally, Plaintiff Teambuilders Counseling Services ("Teambuilders"), filed a separate response in opposition to the motion. Border Area Mental Health Plaintiffs and Teambuilders similarly argue that their claims are not subject to arbitration because they fall outside the scope of their contracts with OHNM.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") applies to arbitration provisions in "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. Under the FAA, such arbitration provisions "are valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 2 of the FAA creates "a substantive rule applicable in state as well as federal courts." *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984). To implement this substantive rule, "a party aggrieved by the

4

alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition" the federal district court "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Describing the FAA as "a liberal federal policy favoring arbitration," the Supreme Court has emphasized "the fundamental principle that arbitration is a matter of contract," and, accordingly, that "courts must place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms." *AT&T Mobility LLC v. Conception*, 131 S. Ct. 1740, 1745 (2011).

The FAA, however, "was not enacted to force parties to arbitrate in the absence of an agreement." *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1286 (10th Cir. 1997). Rather, Congress' concern "was to enforce private agreements into which parties had entered." *Id.* Accordingly, "[t]he existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked." *Id.* at 1287. On a motion to compel arbitration, the district court's role is to determine (1) whether the parties have entered into a valid agreement to arbitrate, and (2) whether the dispute in question falls within the scope of that agreement. *See Keena v. Groupon*, 192 F. Supp. 3d 630, 634 (W.D.N.C. 2016); *Cordas v. Uber Tech., Inc.*, 228 F. Supp. 3d 985, 988 (N.D. Cal. 2017).

## DISCUSSION

Under the FAA, United Defendants move to compel Plaintiffs to arbitrate the claims alleged against them in Plaintiffs' Complaint. In support of their motion, United Defendants argue that the Provider Agreements and the Facility Participation Agreements, entered into by each Plaintiff herein, contain valid and binding arbitration provisions, and that Plaintiffs' claims fall directly within the scope of those provisions. Plaintiffs do not dispute that they entered into valid arbitration agreements, but oppose United Defendants' motion to compel on the basis that

5

their claims do not bear a reasonable relationship to the subject matter of the arbitration agreements and thus do not fall within the scope of those agreements.

I. Whether Plaintiffs' Claims are Subject to Arbitration is for the Arbitrator to Decide.

Citing, *inter alia*, *Clay v. N.M. Title Loans, Inc.*, 288 P.3d 888 (N.M. Ct. App. 2012), Plaintiffs argue that their claims do not fall within the scope of their respective agreements to arbitrate. Doc. 29 at 4-10; Doc. 30 at 3-10. Plaintiffs note that the arbitration provisions in the Provider Agreements and the Facility Participation Agreements specifically apply to "disputes about their business relationship" with OHNM, and that the claims alleged in the instant action are not reasonably related to that business relationship. Doc. 29 at 4-10; Doc. 30 at 3-10. Plaintiffs further argue that their claims are beyond the subject matter of the Provider Agreements and the Facility Participation Agreements, and are based on outrageous and unforeseeable conduct by United Defendants. Doc. 29 at 4-10; Doc. 30 at 3-10.

"[T]he arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate the dispute." *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1280 (10th Cir. 2017). So too, however, does the question of "who has the primary power to decide arbitrability turn[] upon what the parties agreed about *that* matter." *Id.* (emphasis in original). "When parties agree that an arbitrator should decide arbitrability, they delegate to an arbitrator all threshold questions concerning arbitrability – including 'whether their agreement covers a particular controversy.'" *Id.*

Questions of arbitrability thus "encompass two types of disputes: (1) disputes about *whether* a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement; and (2) threshold disputes about *who should have the primary power to decide* whether a dispute is arbitrable." *Id.* (citations omitted; emphasis in original). The

6

second type of dispute – who should decide arbitrability – necessarily precedes the question of whether a dispute is arbitrable. *Id.* at 1281. Accordingly, courts must begin by addressing the issue of who should decide the arbitrability of Plaintiff's claims. *Id.* When addressing this issue – "that is, when courts decide whether a party has agreed that *arbitrators* should decide arbitrability – courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Id.* (citations omitted; emphasis in original).

In *Belnap*, the parties' agreement contained an arbitration provision that included the following language: "The arbitration shall be administered by JAMS and conducted in accordance with its Streamlined Arbitration Rules and Procedures (the "Rules"), except as provided otherwise herein." *Id.* at 1276. In turn, JAMS Rule 8(c) provides:

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted and ruled on by the Arbitrator. *The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter*.

*Id.* at 1281 (emphasis added). The Court found that the "plain language" of the parties' agreement established "the JAMS Rules as the default controlling rubric," and as a result, concluded that the parties "incorporated the JAMS Rules into their Agreement." *Id.* at 1282, 1283.

Based on its conclusion that the parties incorporated the JAMS Rules into their agreement, the Court determined that the parties "clearly and unmistakably agreed to submit arbitrability issues to an arbitrator, including disputes over the interpretation or scope of the agreement under which arbitration was sought." *Id.* at 1284. Because the parties "clearly and unmistakably agreed to arbitrate arbitrability," the Court further held that "the district court erred

7

when it determined the arbitrability of [the plaintiff's] claims instead of deferring that determination to an arbitrator." *Id.* Thus, under *Belnap*, "when the parties clearly and unmistakably agree[] to arbitrate arbitrability, all questions of arbitrability – including the question of whether the claims fall within the scope of the agreement to arbitrate – [must] be resolved by an arbitrator." *Id.*

In the instant case, the arbitration provisions in the Provider Agreements and the Facility Participation Agreements state that any disputes between the parties that cannot be resolved within 30 days "shall be submitted to binding arbitration in accordance with the rules of the American Arbitration Association ("AAA")." Doc. 6-1, Ex. 1 at Art. 30; Doc. 6-1, Ex. 2 at Section 8. In turn, AAA Rule 7, which is substantively identical to JAMS Rule 8(c), states that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." AAA, Commercial Arbitration Rules and Mediation Procedures ¶ R-7(a) (2013).

As *Belnap* instructs, by including in the arbitration agreement specific language indicating that the AAA Rules apply to the arbitration of any disputes between the parties, the parties established the AAA Rules "as the default controlling rubric," and as a result, "incorporated the AAA Rules into their agreement." *Belnap*, 844 F.3d at 1282, 1283. And because the AAA Rules give the arbitrator the power to rule on issues including the scope of the arbitration agreement and the arbitrability of the parties' claims, the parties here "clearly and unmistakably agreed to submit arbitrability issues to an arbitrator, including disputes over the interpretation or scope of the agreement under which arbitration was sought." *Id.* at 1284.

The fact that the agreement in the instant case incorporates the AAA Rules, while the

8

agreement at issue in *Belnap* incorporated the JAMS Rules, is of no moment. The AAA Rules and the JAMS Rules contain substantively identical provisions designating the arbitrator as the person to determine questions of arbitrability. Indeed, in confirming the "soundness" of its determination, the Court in *Belnap* explained that, "in an analogous context, all of our sister circuits to address the issue have unanimously concluded that incorporation of the substantively identical (as relevant here) AAA Rules constitutes clear and unmistakable evidence of an agreement to arbitrate arbitrability." *Id.* at 1283 (citing *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (observing that "[v]irtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability"); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009) ("Most of our sister circuits that have considered this issue agree with our conclusion that an arbitration provision's incorporation of the AAA Rules . . . is a clear and unmistakable expression of the parties' intent to reserve the question of arbitrability for the arbitrator and not the court."); *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 11 (1st Cir. 2009) (stating that incorporation of the AAA Rules "is about as 'clear and unmistakable' as language can get")).

By incorporating the AAA Rules into the arbitration provisions set forth in the Provider Agreements and the Facility Participation Agreements, Plaintiffs and United Defendants clearly and unmistakably agreed to arbitrate arbitrability. Accordingly, all questions of arbitrability – including the questions Plaintiffs raise as to whether their claims reasonably relate to the subject matter of the parties' agreements to arbitrate – must be resolved by an arbitrator. Under *Belnap*, this Court has no discretion to decide whether Plaintiffs' claims are outside the scope of the arbitration provisions in the Provider Agreements and the Facility Participation Agreements,

9

but rather must defer that determination to the arbitrator.

## CONCLUSION

Plaintiffs do not dispute that they entered into valid agreements to arbitrate, but oppose United Defendants' motion to compel arbitration on the basis that the claims alleged in the instant action do not fall within the scope of the arbitration agreements. For the reasons set forth above, however, the issue of whether Plaintiffs' claims are arbitrable is for the arbitrator, rather than this Court, to determine, and the Court must defer that decision to the arbitrator. Accordingly, no basis exists for the Court to deny United Defendants' motion to compel arbitration.

**IT IS THEREFORE ORDERED** that United Defendants' Motion to Compel Arbitration [Doc. 6] is **GRANTED.**

DATED this 28th day of March, 2018.

_____
MARTHA VÁZQUEZ
United States District Judge