IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BORDER AREA MENTAL HEALTH, INC.,
COUNSELING ASSOCIATES, INC., EASTER
SEALS EL MIRADOR, FAMILIES & YOUTH, INC.,
HOGARES, INC., SOUTHWEST COUNSELING
CENTER, INC., SOUTHERN NEW MEXICO
HUMAN DEVELOPMENT, INC., TEAMBUILDERS
COUNSELING SERVICES, INC., THE
COUNSELING CENTER, INC., and VALENCIA
COUNSELING, INC.,

   Plaintiffs,

v.                CV 16-1213 MV/SCY

UNITED BEHAVIORAL HEALTH, INC. and
UNITED HEALTHCARE INSURANCE COMPANY,
INC., d/b/a OPTUMHEALTH NEW MEXICO,
PUBLIC CONSULTING GROUP, INC., ELIZABETH
A. MARTIN, ANDREW SEKEL, TIMOTHY S.
MILLER, and JOHN DOES 1-10,

   Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Plaintiffs' Motion to Set Aside the Opinion of the Arbitrator [Doc. 60]. The Court, having considered the motion, briefs, and relevant law, and being otherwise fully informed, finds that the Motion is not well-taken and will be denied.

## BACKGROUND

OptumHealth New Mexico "("OHNM") is a joint venture that was formed by United Behaviorial Health, Inc. and United Healthcare Insurance Company, Inc. Doc. 6-1 at ¶ 3. In 2009, OHNM entered into a "Statewide Contract" with the New Mexico Inter-Agency Behavioral Health Purchasing Collaborative (the "Collaborative") to manage New Mexico's

1

Medicaid and state-funded programs. *Id.* at ¶ 4. Pursuant to the Statewide Contract, from 2009 through December 31, 2013, OHNM served as the "Statewide Entity" to administer the delivery of behavioral health services to individuals enrolled in and eligible to receive services under the Collaborative's agency programs. *Id.*

In turn, in its capacity as the Statewide Entity, OHNM entered into contracts with numerous healthcare providers, including Plaintiffs, to provide the necessary behavioral health and/or substance abuse health care services to the individual enrollees. *Id.* at ¶ 5. Each of the "Provider Agreements" and "Facility Participation Agreements" between Plaintiffs and OHNM includes an arbitration provision, which states in relevant part that, in the event the parties were unable to resolve "any disputes about their business relationship," those disputes would be "submitted to binding arbitration in accordance with the rules of the American Arbitration Association ("AAA")." Doc. 61, Ex. 1 at Art. 30; Doc. 6-1, Ex. 2 at Section 8.

Plaintiffs allege that OHNM mismanaged its Statewide Contract and, in order to cover up its mismanagement, accused its healthcare providers, including Plaintiffs, of engaging in institutional fraud. Doc. 1-1 at ¶¶ 36, 43. Plaintiffs further allege that OHNM audited Plaintiffs with the predetermined outcome of finding "credible allegations of fraud," in order to trigger the suspension of payments to Plaintiffs for the healthcare services that they had provided pursuant to their contracts with OHNM. *Id.* at ¶¶ 52-55. As a result, Plaintiffs allege, they are owed payments totaling $11.5 million. *Id.* at ¶ 62.

Based on these allegations, Plaintiffs commenced the instant action in the First Judicial District Court of New Mexico, Santa Fe County, on June 23, 2016, against United Behavioral Health and United Healthcare Insurance Company, doing business as OHNM, Elizabeth Martin, Chief Executive Officer of OHNM, Andrew Sekel, Chief Executive Officer of OptumHealth

2

Behavioral Solutions, and Timothy S. Miller, regional manager for OHNM, collectively referred to as the "United Defendants," in addition to the Public Consulting Group, the entity that was hired to conduct the audits of Plaintiffs. Doc. 1-1. On November 3, 2016, United Defendants removed the action to this Court. Doc. 1. In their Complaint, Plaintiffs allege claims against United Defendants for interference with contractual relations, prima facie tort, civil conspiracy to commit interference with contractual relations and prima facie tort, and violations of the New Mexico Unfair Practices Act. Doc. 1-1 at ¶¶ 67-89.

On November 18, 2016, United Defendants filed a motion to compel Plaintiffs to arbitrate the claims alleged against them. Doc. 6. In support of their motion, United Defendants argued that the agreements into which each Plaintiff had entered contained valid and binding arbitration provisions, and that Plaintiffs' claims fell directly within the scope of those provisions. *Id.* Plaintiffs did not dispute that they entered into valid arbitration agreements, but opposed United Defendants' motion to compel on the basis that their claims did not bear a reasonable relationship to the subject matter of the arbitration agreements and thus did not fall within the scope of those agreements. Doc. 29 at 4-10; Doc. 30 at 3-10.

In a Memorandum Opinion and Order entered March 28, 2018, the Court granted United Defendants' motion to compel, explaining that, by incorporating the AAA Rules into the arbitration provisions set forth in the relevant agreements, Plaintiffs and United Defendants "clearly and unmistakably" agreed to arbitrate arbitrability. Doc. 46. Accordingly, the Court further explained, all questions of arbitrability – including the questions Plaintiffs raised as to whether their claims reasonably relate to the subject matter of the parties' agreements to arbitrate – must be resolved by an arbitrator. *Id.* Under controlling Tenth Circuit precedent, the Court found that it had no discretion to decide whether Plaintiffs' claims were outside the scope of the

3

arbitration provisions in the relevant agreements, but rather was obligated to defer that determination to the arbitrator. *Id.* Accordingly, the Court found no basis to deny United Defendants' motion compelling arbitration of Plaintiffs' claims against it. *Id.*

On June 11, 2018, Plaintiffs initiated an arbitration proceeding with the AAA, and requested that the Arbitrator declare that their claims against United Defendants are not subject to arbitration. The Arbitrator, Judge Bruce. D. Black (Retired), ordered the parties to submit briefing on the threshold issue of arbitrability. Thereafter, on December 5, 2018, the Arbitrator issued his Opinion on Arbitrability. Doc. 60-4. The Arbitrator determined that the claims asserted by Plaintiffs against United Defendants fall within the scope of the arbitration provision in the relevant agreements, and thus must be pursued solely through binding arbitration. *Id.* On the instant motion, Plaintiffs request that this Court "vacate the Arbitrator's decision and allow the parties to litigate, in this Court," Plaintiffs' claims against United Defendants. Doc. 60 at 3. United Defendants oppose this request.

## DISCUSSION

I. There is No Basis to Set Aside the Arbitrator's Decision

A. Legal Standard

"Judicial review of arbitration [] decisions is extremely limited; indeed, it has been described as 'among the narrowest known to law.'" *Dominion Video Satellite, Inc. v. Echostar Satellite, L.L.C.*, 430 F.3d 1269, 1275 (10th Cir. 2005) (quoting *Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 932 (10th Cir. 2001)). Under Section 10 of the Federal Arbitration Act ("FAA"), "vacation of an arbitration award is only proper in a few instances that include fraud, corruption, arbitrator misconduct [including the refusal to hear evidence pertinent and material to the controversy], and arbitrator overreach." *Dominion Video*, 430 F.3d at 1275 (quoting *Bowen*,

4

254 F.3d at 932); 9 U.S.C.§ 10. "Various courts have determined that vacation is also appropriate when the arbitration award violates public policy, when the arbitrator did not conduct a fundamentally fair hearing, or when an arbitrator's decision is 'based on an "manifest disregard" of the law, defined as "willful inattentiveness to the governing law."' *Dish Network, L.L.C. v. Ray*, 900 F.3d 1240, 1243 (10th Cir. 2018) (quoting *Chevron Mining Inc. v. United Mine Workers of Am., Local 1307*, 648 F.3d 1151, 1154 (10th Cir. 2011)). Mere "errors in either the arbitrator's factual findings or his interpretation of the law . . . do not justify review or reversal on the merits of a controversy." *Dish Network*, 900 F.3d at 1342 (quoting *Chevron Mining*, 648 F.3d at 1154). Rather, "manifest disregard means the record will show the arbitrator[] knew the law and explicitly disregarded it." *Dominion Video*, 430 F.3d at 1275 (quoting *Bowen*, 254 F.3d at 932).

"[T]his "level of deference [] applies to [all] disputes that the parties agreed to submit to arbitration." *Dish Network*, 900 F.3d at 1243. Thus, where the parties have "clearly and unmistakably" agreed to delegate questions of arbitrability to the arbitrator, the arbitrator's decisions as to the arbitrability of the parties' disputes are equally subject to this "extremely limited" standard of review. *Id.* at 1248.

    B. <u>Application to the Instant Case</u>

Plaintiffs argue that even if the Arbitrator had the authority to determine whether their claims are subject to arbitration, the Arbitrator's determination should be set aside because the Arbitrator "refus[ed] to hear evidence pertinent and material to the controversy," thus prejudicing Plaintiffs' rights, and "manifestly disregard[ed] the applicable law." Doc. 60 at 2-3. As noted above, in granting United Defendants' motion to compel, the Court held that Plaintiffs and United Defendants "clearly and unmistakably" agreed to arbitrate all questions of

5

arbitrability, including the question of whether Plaintiffs' claims are subject to arbitration. Doc. 46. Having so held, this Court's "review becomes extremely limited and is among the narrowest known to the law." *Dish Network*, 900 F.3d at 1248 (citation omitted).

Where, as here, "the parties bargained for the arbitrator's construction of their agreement, an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits." *Id.* (quoting *Oxford Health Plans L.L.C. v. Sutter*, 569 U.S. 564, 569 (2012); *see also Sutter*, 569 U.S. at 571-72 (Section 10(a)(4) "permits courts to vacate an arbitral decision only when the arbitrator strayed from his delegated task of interpreting a contract, not when he performed that task poorly."). Accordingly, "the sole question" for the Court "is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Dish Network*, 900 F.3d at 1248 (quoting *Sutter*, 569 U.S. at 569). "[T]his question can almost always be answered by simply 'summarizing the arbitrator's decisions.'" *Dish Network*, 900 F.3d at 1248 (quoting *Sutter*, 569 U.S. at 570).

Here, in his decision, the Arbitrator specifically interpreted the arbitration provision at issue to determine whether it encompasses Plaintiffs' claims. First, the Arbitrator addressed "the initial issue" of whether the arbitration provision is "broad or narrow." Doc. 60-4 at 3. The Arbitrator noted that the provision is "not limited to any particular dispute and applies generally to their 'business relationship.'" *Id.* Citing authority, the Arbitrator found that "numerous courts have already interpreted the 'business relationship' language to be a 'broad' arbitration clause." *Id.* The Arbitrator went on to discuss in depth the case of *La Frontera Center, Inc. v. United Behavioral Health, Inc.*, 268 F. Supp. 3d 1667 (D.N.M. 2017), in which this Court "analyzed the same arbitration provision at issue here," and applied the law of that case to the facts here. *Id.* at 4. The Arbitrator then specifically addressed and rejected

6

Plaintiffs' argument that because their claims involve United Defendants' tortious behavior, their claims are outside the scope of the arbitration provision. *Id.* In doing so, the Arbitrator cited to precedent from the United States Supreme Court, New Mexico courts, and federal courts in this circuit and elsewhere. *Id.* The Arbitrator further noted that the specific torts at issue here "are not unfamiliar in the arbitration context," again citing to multiple authorities. *Id.* at 4-5. Finally, the Arbitrator stated that in *La Frontera*, the Court had "rejected similar claims under an identical arbitration provision," and discussed the Court's analysis in *La Frontera*. *Id.* at 5. Based on this analysis, the Arbitrator concluded that Plaintiffs' claims against United Defendants "fall within the scope of the arbitration provision in their Provider Agreements and, therefore, may be pursued solely through binding arbitration." *Id.* at 6.

This summary of the Arbitrator's decision shows that "he interpreted the parties' contract, which is all [this Court is] allowed to consider." *Dish Network*, 900 F.3d at 1250. Regardless of Plaintiffs' opinion of the Arbitrator's decision or this Court's "opinion of the [A]rbitrator's reasoning, the [A]rbitrator did not stray from his delegated task of interpreting the contract. Therefore, his decision must stand." *Id.* at 1251.

Plaintiffs' argument to the contrary is that the Arbitrator completely disregarded "Plaintiffs' primary argument and Plaintiffs' reliance on New Mexico contract law, and specifically the case of *Clay v. N.M. Title Loans, Inc.*, [288 P.3d 888 (N.M. Ct. App. 2012)]." Doc. 60 at 2. In *Clay*, the New Mexico Court of Appeals held that "claims based on conduct that is unforeseeable to the parties at the time of entering into an agreement including an arbitration provision are not within the scope of the provision as a matter of contract law." 288 P.3d at 898. Plaintiffs argue that because the Arbitrator "did not even cite the *Clay* case, much less take into account the completely outrageous nature of Defendants' actions about which

7

Plaintiffs complain," the Arbitrator "refus[ed] to hear evidence pertinent and material to the controversy," and/or "exceed[ed] his authority by manifestly disregarding the applicable law." *Id.* at 3.

First, the Arbitrator's failure to consider Plaintiffs' legal argument or the *Clay* decision does not constitute a refusal to hear evidence. Neither legal argument or legal authority is evidence. Plaintiffs point to no evidence that they sought to introduce but the Arbitrator refused to hear. Indeed, it appears that the Arbitrator made a purely legal determination based on legal briefing alone rather than on an evidentiary record. Accordingly, the Court does not find that the Arbitrator refused to hear evidence pertinent and material to the controversy.

Nor does the Arbitrator's failure to consider Plaintiffs' legal argument or the *Clay* decision constitute a manifest disregard of the law. In *Clay*, the plaintiff borrower signed a loan agreement with the defendant lender, in which he agreed to pay a certain amount for a loan, and to use his truck as collateral to secure the loan. 288 P.3d at 891. The borrower did not pay back the loan when it was due, and two employees of a third-party repossession company attempted to repossess the truck on behalf of the lender. *Id.* The borrower resisted, and one of the repossession employees shot the borrower. *Id.* The borrower filed an action against, *inter alia*, the lender. *Id.* at 892. "The gist of Borrower's allegations [was] that Lender intentionally and recklessly hired the co-defendants to enforce their security interests without appropriate oversight or review of their licensure or expertise." *Id.* at 895. The lender filed a motion to compel the borrower to arbitrate his claims, pursuant to an arbitration provision in their agreement. *Id.* at 892. The arbitration provision indicated that arbitrable claims had "the broadest possible meaning," but nonetheless indicated that several types of claims were excluded, including the lender's "right to enforce [its] security interest and to obtain possession

8

of the Collateral by seeking a replevin judgment or by using self-help." *Id.* at 895. In determining that the borrower's claims were not within the scope of the parties' arbitration agreement, the court recognized that, under New Mexico precedent, "[i]n order to fall within the scope of the arbitration clause, the claims at use must bear a reasonable relationship to the contract in which the arbitration clause is found." *Id.* at 894. The court found that such a reasonable relationship was lacking:

> The plain language of the Agreement reflects a business arrangement between Borrower and Lender for the loan of funds in exchange for fees and interest. It is reasonable that Borrower understood the arbitration provision to apply to matters related to fees, finance charges, payments, renewals, warranties, notices and so on. Even if Borrower intended to submit to arbitration disputes related to the collateral . . . or default . . . , it is not reasonable to conclude that he intended to give up his right to a jury trial if he was shot during the repossession.

*Id.* at 897.

Nothing in *Clay* suggests that the Arbitrator willfully disregarded controlling law in determining that Plaintiffs' claims fall within the scope of the parties' arbitration agreement. As the court counseled in *Clay*, the Arbitrator herein specifically considered whether Plaintiffs' claims bore a "reasonable relationship" to the parties' agreements. Doc. 60-4 at 2-5. In applying the "reasonable relationship" test to the facts before it, the court in *Clay* came to a conclusion different from that reached by the Arbitrator herein. This, however, does not demonstrate that the Arbitrator willfully disregarded controlling law, as the facts in *Clay* are distinguishable from those here. In *Clay*, the claims related not to the business relationship between the parties, but rather to injuries resulting from the plaintiff being shot in the course of the lender's resort to "self-help" in an effort to obtain possession of the collateral, an issue expressly excluded from the scope of the parties' arbitration agreement. In contrast, here the Plaintiffs' claims derive directly from the business arrangement between the parties that was the

9

subject of their Provider Agreement – the very agreement that contained an arbitration provision mandating arbitration of "any disputes about their business relationship." As the Arbitrator quoted from Plaintiffs' brief, "Plaintiffs' claims in this matter are based on the Defendants' interference with Plaintiffs' provision of services to New Mexico and to Medicaid Patients *under the terms of the Provider Participation Agreements*." Doc. 60-4 (emphasis added). Accordingly, the holding in *Clay* "is a far cry from what [Plaintiffs] proffer[]." *Dish Network,* 900 F.3d at 1252. The court in *Clay* "certainly did not hold" that the specific tort claims raised by Plaintiffs here are outside the scope of the broad arbitration provision governing the parties' disputes. *Id.*

Accordingly, the Arbitrator did not manifestly disregard New Mexico law when he concluded that Plaintiffs' claims are subject to arbitration by the broad language of the parties' arbitration agreement, in light of precedent interpreting the same arbitration provision at issue here and the nature of Plaintiffs' tort claims. There thus is no basis to set aside the Arbitrator's determination that Plaintiffs' claims are subject to arbitration.

II. Dismissal of this Action

On April 18, 2018, this Court entered a Judgment dismissing Plaintiffs' claims against Public Consulting Group. Doc. 69. Plaintiffs' claims against United Defendants have been submitted to arbitration. Doc. 46. There thus are no claims remaining before this Court. Neither Plaintiffs nor United Defendants have requested a stay of this case as against United Defendants. Under these circumstances, the Court finds that dismissal of Plaintiffs' claims against United Defendants is proper. *Armijo v. Prudential Ins. Co. of Am.*, 72 F.3d 793, 797 (10th Cir. 1995) (finding that district court did not err in dismissing action where defendant moved to compel arbitration and instead of requesting a stay pending such arbitration, requested

dismissal of plaintiff's claims).

## CONCLUSION

For the foregoing reasons, Plaintiffs have provided no valid basis for this Court to set aside the Arbitrator's determination that Plaintiffs' claims are subject to arbitration. Because no claims remain before this Court, and because none of the parties has requested a stay of this matter, dismissal of Plaintiffs' claims against United Defendants is proper.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Set Aside the Opinion of the Arbitrator [Doc. 60] is **DENIED** and Plaintiffs' claims against United Defendants are **DISMISSED**.

DATED this 28th day of May, 2019.

_____
MARTHA VAZQUEZ
United States District Judge